**Seton Hall University**
**eRepository @ Seton Hall**

Law School Student Scholarship                                      Seton Hall Law

2017

# Undermining the United States Sentencing Guidelines: Downward Departure in Child Pornography Cases

Dolores Bujnowski

Follow this and additional works at: http://scholarship.shu.edu/student_scholarship

 Part of the Law Commons

Recommended Citation

Bujnowski, Dolores, "Undermining the United States Sentencing Guidelines: Downward Departure in Child Pornography Cases" (2017). *Law School Student Scholarship*. 930.
http://scholarship.shu.edu/student_scholarship/930

# INTRODUCTION

*"I believe indeterminate sentencing can be extremely useful, but I also believe that*
*any such system should always take into consideration the special knowledge as to*
*the facts in a case which only the trial judge possesses. I am deeply impressed with the gravity*
*and wisdom with which most federal judges approach the responsibility of sentencing.*
*It is a difficult, soul-searching task at best.* – Robert F. Kennedy

Robert F. Kennedy's quote discusses the act of criminal sentencing and judicial discretion. He, the former United States Attorney General and the hopeful 1968 Democratic Presidential Nominee, believed that undetermined and unspecified criminal sentences had certain advantageous features, in contrast to already specified and quantified criminal sentences faced by federal criminal defendants. Although Robert F. Kennedy found indeterminate sentencing to be extremely useful, he noted the ultimate importance and significance of judicial discretion in determining any criminal sentence. In 1984, approximately twenty-three years after United States Attorney General Robert F. Kennedy delivered the above statements to the Sixth, Seventh, and Eighth Judicial Circuits at the Joint Sentencing Institute in Chicago, Illinois, the United States Congress created a new sentencing system and established the United States Sentencing Commission.[1] In 1987, the United States Sentencing Commission, following the instructions and directives from the United States Congress, created a complete and comprehensively detailed set of sentencing guidelines that outlines a specific criminal sentencing range for any given criminal offense.[2]

According to 18 U.S.C. §3553 (b), departures may occur only in cases when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into

---

[1]     Marc L. Miller & Ronald F. Wright, *Criminal Procedures: Prosecution and Adjudication*, 374 (5th ed. 2015).

[2]     *Id.* at 374-75.

consideration by the [United States] Sentencing Commission in formulating the [United States sentencing] guidelines."[3] Yet, even with the implementation of the United States sentencing guidelines, which specifically outline a specific and required criminal sentencing range for any given criminal offense, a considerable amount of sentencing disparities and downward sentencing departures have occurred in many federal criminal cases, especially and most prevalently in cases involving federal child pornography offenses, as opposed to similarly situated offenses, like sexual abuse.

This phenomenon is confirmed and illustrated by Kimberly A. Kaiser and Cassia Spohn, authors of an article and empirical study entitled *Fundamentally Flawed? Exploring the Use of Policy Disagreements in Judicial Downward Departure for Child Pornography Sentences*.[4] According to Kimberly A. Kaiser and Cassia Spohn, "there is little doubt that offenders in [child pornography] cases are regularly being sentenced below the [United States sentencing] guideline range."[5] Further, the authors state that this habitual practice is ultimately confirmed by a recent study conducted by Melissa Hamilton[6] which found that "a child pornography offender was more likely to receive a downward departure if the sentencing judge listed a concern about the general adequacy of the [sentencing] guideline."[7] As noted by Kimberly A. Kaiser and Cassia Spohn, one of the purposes of their article and empirical study is to "determine whether sentencing judges use downward departures more frequently in child pornography cases than in

---

[3]     *Id*. at 375.
[4]     *See generally*, Kimberly A. Kaiser and Cassia Spohn, *Fundamentally Flawed? Exploring the Use of Policy Disagreements in Judicial Downward Departure for Child Pornography Sentences*. https://repository.asu.edu/attachments/144965/content/Author_final.pdf (Last visited December 1, 2016).
[5]     *Id*. at 11.
[6]     Melissa Hamilton, Sentencing Adjudication: *Lessons from Child Pornography Policy Nullification*, Georgia State University Law Review, Volume 30, 375.
http://readingroom.law.gsu.edu/cgi/viewcontent.cgi?article=2746&context=gsulr (Last visited December 1, 2016).
[7]     Kimberly A. Kaiser and Cassia Spohn, *Fundamentally Flawed? Exploring the Use of Policy Disagreements in Judicial Downward Departure for Child Pornography Sentences*, 11. https://repository.asu.edu/attachments/144965/content/Author_final.pdf (Last visited December 1, 2016).

cases involving offenders convicted of sexual abuse and other offenses," while also attempting to determine "whether the magnitude of the sentence discount is larger in child pornography cases than in these other types of cases."[8] More simply stated, the authors maintain that their empirical study "assesses whether judicial downward departures are more prevalent among child pornography offenders compared with a matched sample of defendants convicted of other offenses."[9]

In order to empirically assess whether judicial downward departures are more prevalent among child pornography offenders in comparison to a matched sample of defendants convicted of other offenses, Kimberly A. Kaiser and Cassia Spohn compared sentencing outcomes for offenders convicted of sexual abuse with those for offenders convicted of child pornography because "both federal judges and legal scholars have specifically cited (and criticized) the harshness in federal sentencing for child pornography offenders compared with the more lenient penalties imposed on those convicted of the arguably more severe offense of sexual abuse."[10] The authors noted that "the outcome of interest for this study is whether an offender received a judicial downward departure, and as a result was sentenced below the [United States sentencing] guideline range."[11] Ultimately, the results of Kimberly A. Kaiser and Cassia Spohn's article and empirical study confirm that a "conviction for nonproduction child production significantly affects both the likelihood and the magnitude of judicial downward departure decisions."[12] According to the authors, "[n]onproduction child pornography offenders are approximately [thirty-two percent] more likely than offenders convicted of sexual abuse to receive a judicial

---

8   *Id.*
9   *Id.* at 2.
10  *Id.* at 15.
11  *Id.* at 17.
12  *Id.* at 24.

downward departure, and when they do, their sentence discounts are almost [eighty-three percent] larger."[13]

Child pornography is "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where: the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct."[14] A minor is defined and identified, for statutory purposes, as any individual under the age of eighteen.[15] Research shows that a considerable number of federal judges believe that child pornography sentences are too long. According to Families Against Mandatory Minimums, in a recently conducted survey by the United States Sentencing Commission, "[seventy-one] percent of respondents believed that the mandatory minimum for receipt of child pornography was too high."[16]

Additionally, as Families Against Mandatory Minimums reports, the same holds true for criminal sentences stemming from the sentencing guidelines, as "[seventy] percent of judges surveyed respond[ed] that the [United States sentencing] guideline ranges for possession [of child pornography] were too high.[17] Moreover, "[sixty-nine] percent [of respondents] believed

---

13      *Id.*
14      Families Against Mandatory Minimums, *An Introduction to Child Pornography Sentencing*, 1, http://famm.org/wp-content/uploads/2013/09/FS-Intro-to-Child-Porn-8.22.13-fixed.pdf (Last visited December 1, 2016).
15      *Id.*
16      *Id.* at 3.
17      *Id.*

that sentences for receipt of child pornography [offenses] were excessive."[18] As a result of this belief, federal judges "are responding to this excess by handing down [criminal] sentences below the [United States sentencing] guideline range when they are able and when they believe it is appropriate."[19] In 2010, less than fifty-five percent of child pornography sentences fell within or below the United States sentencing guideline range pursuant to a government-sponsored departure.[20] That same year, approximately forty-three percent of child pornography offenders received nongovernment-sponsored sentences below the appropriate United States sentencing guideline range.[21]

According to Judge Robert W. Pratt, a United States District Judge in Des Moines, Iowa, "…[T]he sentencing guidelines for child pornography crimes do not appear to be based on any sort of science and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses."[22] When asked about sentences for child pornography offenses, Judge Jack Weinstein, a Federal District Court Judge for the Southern District of New York, has noted, "We're destroying lives unnecessarily."[23] Further, the United States Supreme Court has stated that "departures from particular guideline sentences should be treated as feedback on those guidelines, information the [United States Sentencing] Commission can use to improve guidelines."[24] In an article entitled *Judge Criticizes Federal Sentencing Guidelines in Pornography Case*, the Denver Post highlighted a case where a federal judge in Denver, Colorado sentenced an individual convicted

---

[18]     *Id*.
[19]     *Id*.
[20]     *Id*. at 3-4
[21]     *Id*. at 4.
[22]     *Id*.
[23]     *Id*.
[24]     *Id*.

Case 1:18-cr-00094-WCG   Filed 10/22/18   Page 6 of 37   Document 23-1

of a child pornography offense to the mandatory minimum of ten years in prison, while

"criticizing the rigidity of the federal sentencing guidelines that...prevented him from giving a

more appropriate, shorter sentence."[25] The Denver Post article noted that the federal judge issued

a forty-page sentencing opinion, which opined that "the federally-imposed sentencing guidelines

for child pornography possession cases are greater than necessary."[26]

Furthermore, in an article entitled *Debate Rages Over Severity of Child-Porn Sentences*, the

Associated Press noted that "child-pornography offenders are now the focus of an intense debate

within the legal community as to whether the federal sentences they face have become, in many

cases, too severe."[27] According to the Associated Press, "many federal judges and public

defenders say repeated moves by Congress to toughen the penalties over the past [twenty-five]

years have badly skewed the guidelines, to the point where offenders who possess and distribute

child pornography can go to prison for longer than those who actually rape or sexually abuse a

child."[28] Alternatively, "some prosecutors and members of [the United States] Congress, as well

as advocates for sexual-abuse victims, oppose a push for more leniency."[29] The Associated Press

further notes that in a 2010 survey of federal judges conducted by the United States Sentencing

Commission, approximately seventy percent of federal judges said that "the proposed ranges of

sentences for possession and receipt of child pornography were too high."[30] Moreover,

"demonstrating their displeasure, federal judges issued [child pornography] sentences below the

---

[25]     Kirk Mitchell, *Judge Criticizes Federal Sentencing Guidelines in Pornography Case*, The Denver Post
(2016), http://www.denverpost.com/2016/07/26/judge-criticizes-federal-sentencing-guidelines-in-pornography-case/
(Last visited December 1, 2016).
[26]     *Id.*
[27]     *Debate Rages Over Severity of Child-Porn Sentences*, The Associated Press (2012),
http://usatoday30.usatoday.com/news/nation/story/2012-04-29/child-porn-sentencing/54627418/1 (Last visited
December 1, 2016).
[28]     *Id.*
[29]     *Id.*
[30]     *Id.*

[United States sentencing] guidelines [forty-five percent] of the time in 2010, more than double the rate for all other crimes."[31]

In the article, the Associated Press quotes New York-based federal defender Deirdre von Dornum, who notes that the "[United States] sentencing guidelines contribute to unjust disparities, depending on whether a prosecutor charged a defendant with receipt of child pornography, as well as possession."[32] According to Deirdre von Dornum, "the average sentence for a federal child pornography offense in 2010 was higher than for all other offenses except murder and kidnapping."[33] The following research essay will discuss and examine the federal sentencing disparities that presently exist in criminal sentencing proceedings for federal child pornography offenses, with a clear focus on case and statutory analysis and the historical progression of the United States sentencing guidelines.

## THE UNITED STATES SENTENCING GUIDELINES: AN OVERVIEW

The United States Congress created both a new sentencing system and the United States Sentencing Commission through the passage of the Sentencing Reform Act of 1984.[34] In 1987, the United States Sentencing Commission, following general statutory guidance, produced a collection of comprehensive sentencing guidelines.[35] Under the United States sentencing guidelines, the trial judge first calculates an offense level, ranging from one to forty-three, to measure the seriousness of the offense.[36] The trial judge then calculates a criminal history

---

[31]     *Id*.

[32]     *Id*.

[33]     *Id*.

[34]     Marc L. Miller & Ronald F. Wright, *Criminal Procedures: Prosecution and Adjudication*, 374 (5th ed. 2015).

[35]     *Id*. at 374-75.

[36]     *Id*. at 375.

Case 1:18-cr-00094-WCG   Filed 10/22/18   Page 8 of 37   Document 23-1

category, ranging on a scale from one to six, to account for the offender's prior criminal convictions.[37] In order for the trial judge to combine an offender's two scores, the United States sentencing guidelines created a grid, placing the offense level on the vertical axis, and the criminal history category on the horizontal axis.[38] Each combination of the two scores corresponds to a specific box on the grid, which contains a probable sentencing range, expressed as months of imprisonment, for that particular offense level and criminal history score.[39]

Each crime located within the United States sentencing guidelines begins with a base offense level.[40] Trial judges are instructed to adjust the base offense level by either an increase or a decrease, depending on specific facts and offense information stemming from each respective case.[41] Additionally, trial judges are to consider an offender's relevant conduct related to the charged offense.[42] Once the trial judge has determined the appropriate sentencing range through the use of the United States sentencing guidelines' grid, the trial judge can also decide whether to "depart up or down from the narrow range of sentences specified under the guidelines."[43] As previously noted, according to 18 U.S.C. §3553 (b), departures may occur only in cases when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the [United States] Sentencing Commission in formulating the [United States sentencing] guidelines."[44]

---

[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*

## THE HISTORICAL PROGRESSION OF THE UNITED STATES
## CHILD PORNOGRAPHY SENTENCING GUIDELINES

The United States Congress has immersed itself within the sentencing scheme for the distribution and receipt of child pornography since the passage of the Protection of Children Against Sexual Exploitation Act of 1977.[45] As the distribution and receipt of child pornography was a primary concern for the United States Congress, the Protection of Children Against Sexual Exploitation Act of 1977's focus was to ultimately prohibit the use of children to produce child pornography.[46] The Protection of Children Against Sexual Exploitation Act of 1977 established a ten-year statutory sentencing maximum for first-time offenders, in addition to instituting a fifteen-year statutory sentencing maximum for subsequent offenders.[47] The Protection of Children Against Sexual Exploitation Act of 1977 also called for a two-year statutory sentencing mandatory minimum for subsequent offenders.[48] Shortly thereafter, in 1984, the United States Congress passed the Child Protection Act of 1984, which extended penalties to individuals who committed distribution and receipt of child pornography offenses for non-pecuniary purposes.[49] Two years later, in 1986, the United States Congress enacted the Child Sexual Abuse and Pornography Act of 1982 and the Child Abuse Victims' Rights Act of 1986.[50] The latter provided a plethora of civil remedies for victims of child pornography offenses and ultimately

---

[45]      The United States Sentencing Commission, *The History of the Child Pornography Guidelines*, 8-9, (2009) http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/sex-offenses/20091030_History_Child_Pornography_Guidelines.pdf (Last visited December 1, 2016).

[46]      *Id*. at 9.

[47]      *Id*.

[48]      *Id*.

[49]      *Id*.

[50]      *Id*.

increased the statutory sentencing mandatory minimum for subsequent offenders from two years to five years of imprisonment.[51]

The United States Sentencing Commission issued the first set of sentencing guidelines in 1987.[52] The 1987 United States sentencing guidelines provided sentencing ranges and limits for offenders convicted of production of child pornography (under 18 U.S.C. §2251) and the transport, distribution, and receipt of child pornography (under 18 U.S.C. §2252).[53] Offenders convicted under the aforementioned statutes were sentenced under sentencing guidelines §2G2.1 or §2G2.2, respectively.[54] It must be noted that the 1987 United States sentencing guidelines did not contain a sentencing range for the offense of simple possession of child pornography, as this offense was not a federally mandated crime in 1987.[55] In order to determine the base offense levels for child pornography offenses, the United States Sentencing Commission examined the sentencing procedures of the Parole Commission.[56] Then, the United States Sentencing Commission converted the Parole Commission's offense categorization into a sentencing offense level.[57] For child pornography offenses included under sentencing guideline §2G2.2, the United States Sentencing Commission set the base offense level at level thirteen.[58] The 1987 United States sentencing guidelines provided a variety of additional circumstances that would subject certain child pornography offenders to an increase in their respective base offense level.[59] For

---

[51]     *Id.*
[52]     *Id.* at 10.
[53]     *Id.*
[54]     *Id.*
[55]     *Id.*
[56]     *Id.*
[57]     *Id.*
[58]     *Id.*
[59]     *Id.*

example, offenders convicted under sentencing guideline §2G2.2 were subject to a two level increase when an image depicted a child under twelve years of age.[60]

In 1988, the United States Sentencing Commission amended and expanded the language of sentencing guideline §2G2.2. Prior to this amendment, §2G2.2 (b)(1) stated, "If the material involved a minor under the age of twelve years, increase by [two] levels."[61] With the inclusion of the 1988 amendment, §2G2.2 (b)(1) stated, "If the material involved a prepubescent minor or a minor under the age of twelve years, increase by [two] levels."[62] The United States Sentencing Commission noted that the 1988 amendment's purpose was "to provide an alternative measure to be used in determining whether the material involved an extremely young minor for cases in which the actual age of the minor is unknown."[63]

In 1990, the United States Sentencing Commission compiled a Staff Report on the status of child pornography prosecutions in the federal system.[64] As noted by *The History of Child Pornography Guidelines*, the 1990 Staff Report made three findings, including that "child pornography had become a highly organized, multi-million-dollar industry that operates on a nationwide scale, but federal law enforcement efforts should not be limited to large scale distributors of child pornography."[65] Additionally, the 1990 Staff Report also included a mathematical analysis of all prosecutions of child pornography offenses sentenced under the 1988 United States sentencing guidelines.[66] The 1990 Staff Report noted that "thirty-four percent of child pornography offenders convicted under 18 U.S.C. §2252 received a departure from the

---

[60] *Id.*
[61] *Id.* at 11.
[62] *Id.* at 12.
[63] *Id.* at 11.
[64] *Id.* at 13.
[65] *Id.*
[66] *Id.*

12

guidelines and the departures were almost evenly split between sentences above and below the guideline range."[67] Additionally, the 1990 Staff Report concluded that "the penalty structure for §2G2.2 was not in accord with congressional intent with respect to repeat child pornography trafficking offenders, who, under 18 U.S.C. §2252, were subject to a mandatory minimum term of five years of imprisonment."[68]

As a result of these findings, the 1990 Staff Report suggested that the base offense level for offenses falling within §2G2.2 be increased from level thirteen to level fifteen.[69] The 1990 Staff Report reasoned that this base offense level increase was necessary in order to "better insure that the severity of the offense as indicated by the statutory penalty structure was reflected for all offenders under the guideline."[70] On February 16, 1990, in response to the 1990 Staff Report, the United States Sentencing Commission published its proposed amendments to §2G2.2 for "notice and comment."[71] The United States Sentencing Commission's proposed amendments to the current child pornography sentencing guidelines "responded to several issues raised in the 1990 Staff Report by retaining the base offense level of [thirteen] for offenders engaging in simple receipt, [and] establishing a base offense level of [fifteen] for all other offenders."[72] The United States Sentencing Commission's proposed amendments also called for several additions to the current child pornography sentencing guidelines, including: a four level increase if the offenses portrayed "a sadistic or masochistic conduct or other depictions of violence"; a minimum base offense level of twenty-one if "the defendant sexually abused a minor at any time prior to the

---

[67]     *Id.*
[68]     *Id.*
[69]     *Id.* at 14.
[70]     *Id.*
[71]     *Id.*
[72]     *Id.*

commission of the offense"; a four level increase for involvement of a minor under the age of twelve; and a two level increase for involvement of a minor under the age of sixteen.[73]

In response to their proposed amendments, the United States Sentencing Commission received input and suggestions from individual judges, who explained the downward departures in §2G2.2 sentencings.[74] The individual judges indicated that "the view that §2G2.2 offenses involving individuals with no significant criminal history or future likelihood of acting out should receive straight probationary periods."[75] On April 11, 1990, taking the individual judges' commentary and suggestions into account, the United States Sentencing Commission voted to amend §2G2.2 to add a four level enhancement where the image portrayed "sadistic masochistic, or violent conduct."[76] Additionally, the United States Sentencing Commission amended the comment section of §2G2.2, to recommend consideration of an upward departure "where the defendant had sexually abused a minor at any time in the past."[77] Finally, the United States Sentencing Commission also amended §2G2.1 in three distinct ways: one, to create new enhancements related to victim age; two, to provide additional enhancements for defendants who abuse a position of trust; and three, to clarify sentencing guideline calculations when there are multiple victims.[78]

On November 29, 1990, the United States Congress passed the Child Protection Restoration and Penalties Enhancement Act of 1990, which criminalized the possession of child pornography.[79] The Child Protection Restoration and Penalties Enhancement Act of 1990 was a

---

[73] *Id*. at 15.
[74] *Id*.
[75] *Id*. at 16.
[76] *Id*.
[77] *Id*.
[78] *Id*.
[79] *Id*. at 17.

14

part of a much larger piece of legislation, entitled the Crime Control Act of 1990, which contained a general instruction to the United States Sentencing Commission to "amend existing guidelines for sentences involving sexual crimes against children . . . so that more substantial penalties may be imposed if the [United States Sentencing] Commission determines current penalties are inadequate."[80] On January 17, 1991, the United States Sentencing Commission published a proposed guideline for the offense of possession of child pornography, which sought to set the base offense level for the offense of possession of child pornography between level six and level ten.[81] On May 1, 1991, the United States Sentencing Commission submitted an amendment entitled Amendment 372 to the United States Congress.[82] Amendment 372 "insert[ed] an additional guideline at §2G2.4 to address offenses involving receipt or possession of materials depicting a minor engaged in sexually explicit conduct, as distinguished from offenses involving trafficking in such material, which continue to be covered under §2G2.2."[83] Moreover, the United States Sentencing Commission decided to treat the offense of receipt of child pornography as analogous to the offense of possession of child pornography because the United States Sentencing Commission determined that "receipt is a logical predicate to possession, [and] concluded that the guideline sentence in such cases should not turn on the timing or nature of law enforcement intervention, but rather on the gravity of the underlying conduct."[84]

On October 28, 1991, the United States Sentencing Commission was directed to increase the base offense levels for child pornography offenses, reorganize receipt offenses under §2G2.2,

---

[80]        *Id.*
[81]        *Id.* at 18.
[82]        *Id.*
[83]        *Id.*
[84]        *Id.* at 19.

and add a new specific offense characteristic for child pornography offenders.[85] In response, the United States Sentencing Commission amended §2G2.2 by directing that receipt offenses were to be sentenced under §2G2.2, raising the base offense level from level thirteen to level fifteen.[86] The United States Sentencing Commission also added a five level pattern of activity enhancement and explanatory commentary.[87] Additionally, the United States Sentencing Commission amended §2G2.4 by limiting the guideline to those who possess child pornography, raising the base offense level from level ten to level thirteen.[88] The amended §2G2.4 also contained a specific offense characteristic regarding the number of items possessed.[89]

In December 1995, the United States Congress passed the Sex Crimes Against Children Prevention Act of 1995, which contained specific instructions to the United States Sentencing Commission to increase one-hundred twenty penalties under the sentencing guidelines covering child pornography offenses.[90] The United States Sentencing Commission was instructed to amend the United States sentencing guidelines to "increase the base offense level for child pornography offenses by at least [two] levels and to increase the base offense level by at least [two] levels if a computer was used to transmit the notice or advertisement to the intended recipient or to transport or ship the visual depiction."[91] The United States Congress also instructed the United States Sentencing Commission to submit a report detailing child pornography offenses and other sex offenses against children; the United States Sentencing Commission was to include in the report "an analysis of the sentences imposed for offenses [and]

---

[85] *Id*. at 23.
[86] *Id*. at 24.
[87] *Id*.
[88] *Id*.
[89] *Id*.
[90] *Id*. at 26.
[91] *Id*.

an analysis of the type of substantial assistance that courts have recognized as warranting a downward departure from the [United States] sentencing guidelines."[92] On February 23, 1996, the United States Sentencing Commission published proposed amendments to §2G2.2 and §2G2.4 in compliance with the United States Congress' instructions.[93]

With respect to §2G2.2, the United States Sentencing Commission increased the base offense level for child pornography trafficking offenses from level fifteen to level seventeen and added a two level enhancement if a computer was used to solicit participation.[94] §2G2.4 was similarly amended, by increasing the base offense level for possession of child pornography from thirteen to fifteen and added a two level enhancement for use of a computer.[95] On November 1, 1996, the aforementioned amendments to §2G2.2 and §2G2.4 became effective.[96] In June 1996, the United States Sentencing Commission delivered a report to Congress entitled "Sex Offenses Against Children: Findings and Recommendations Regarding Federal Penalties," which analyzed sentences for all convictions for a child sex offense between 1994 and 1995.[97] The 1996 Report to Congress described necessary changes to the sentencing guidelines, and explained that the Sentencing Commission's analysis supported an "enhancement for use of a computer to solicit participation."[98] The United States Sentencing Commission noted that the prevalence of computer use in these crimes increased between 1994 and 1995, and stated its intention to "closely monitor the variety of computer uses in pornography distribution and amend the guidelines as appropriate."[99]

---

[92] *Id.*
[93] *Id.*
[94] *Id.* at 32.
[95] *Id.*
[96] *Id.* at 31.
[97] *Id.* at 29.
[98] *Id.*
[99] *Id.*

In October 1998, the Protection of Children from Sexual Predators Act of 1998 was enacted, which, in addition to addressing the penalties for child pornography offenses, provided directives to the United States Sentencing Commission to "ensure that the sentences, guidelines, and policy statements for offenders convicted of child pornography offenses are appropriately severe and reasonably consistent with other relevant directives and with other [United States sentencing guidelines]."[100] In addition, the Protection of Children from Sexual Predators Act of 1998 also instructed the United States Sentencing Commission to create amendments to "provide appropriate enhancement if the [offender] used a computer with the intent to persuade, induce, entice, coerce, or facilitate the transport of a child."[101] The United States Sentencing Commission was also tasked with creating amendments that would clarify that the term "distribution of pornography" applies to the distribution of pornography both for "monetary remuneration or for a nonpecuniary interest."[102] On April 4, 2000, the United States Sentencing Commission passed a multi-faceted amendment consistent with the instructions and specifications provided by the Protection of Children from Sexual Predators Act of 1998.[103] The amendment "revised the distribution enhancement at §2G2.2 that detailed varying levels of punishment, ranging from a general [two] level distribution enhancement to a [seven] level enhancement for those who distributed child pornography for pecuniary gain or to a minor to persuade the minor to engage in sexual conduct."[104]

In 2003, the United States Sentencing Commission again revised the specific United States sentencing guidelines covering child pornography offenses, pursuant to the Prosecutorial

---

[100]     *Id.* at 32.
[101]     *Id.*
[102]     *Id.* at 33.
[103]     *Id.* at 35.
[104]     *Id.*

Remedies and Other Tools to End the Exploitation of Children Today Act (hereinafter "PROTECT Act").[105] The PROTECT Act made several changes to the child pornography sentencing guidelines and contained provisions by which the United States Congress directly amended the United States sentencing guidelines.[106] Additionally, the PROTECT Act "provided general directives, created a five-year mandatory minimum for trafficking and receipt, raised the statutory maximum for trafficking and receipt from [fifteen] to [twenty] years and for possession from five to ten years, and amended the prefatory language of 28 U.S.C. §994(a)(1), which enumerates the duties of the Commission, to require that guidelines be consistent with all pertinent provisions of any Federal statute."[107]

Section 401 of the PROTECT Act directly amended §2G2.2 and §2G2.4 by adding the following four specific offense characteristics relating to the number and type of child pornographic images to the text of both guidelines.[108] First, if the child pornography offense involved at least ten images, but fewer than one-hundred fifty images, the offender's base offense level was to be increased by two levels.[109] Second, if the child pornography offense involved at least one-hundred fifty images, but fewer than three-hundred images, the offender's base offense level was to be increased by three levels.[110] Third, if the child pornography offense involved at least three-hundred images, but fewer than six-hundred images, the offender's base offense level was to be increased by four levels.[111] Fourth, if the child pornography offense involved six-hundred or more images, the offender's base offense level was to be increased by

---

[105]    *Id*. at 38.
[106]    *Id*.
[107]    *Id*.
[108]    *Id*. at 39.
[109]    *Id*.
[110]    *Id*.
[111]    *Id*.

five levels.[112] On May 16, 2003, the United States Sentencing Commission published these amendments and additions as a final action in the Federal Register.[113]

In addition to amending the sentencing guidelines directly, the PROTECT Act also provided general instructions to the United States Sentencing Commission.[114] For example, the PROTECT Act directed the United States Sentencing Commission to "review and, as appropriate, amend . . . to ensure that the guidelines are adequate to deter and punish conduct…"[115] On December 30, 2003, and January 14, 2004, respectively, the United States Sentencing Commission published for notice and comment its proposed amendments to revise the child pornography guidelines in order to comply with the remaining directives of the PROTECT Act.[116] By virtue of its notice, the United States Sentencing Commission "sought comment on the application of the image table, the appropriate base offense levels for the offenses in light of new statutory penalties, and the consolidation of §2G2.2 and §2G2.4."[117] The United States Sentencing Commission had considered revising the child pornography guidelines to consolidate §2G2.2 and §2G2.4 since at least 1996, as detailed in the 1996 Report to Congress; this consolidation was based on the United States Sentencing Commission's belief that "receipt and possession were similar offenses," and on concerns in "application and disparate resulting sentences."[118]

The United States Sentencing Commission also focused its analysis on the application of the image table that was inserted directly into the United States sentencing guidelines by the

---

112 *Id.*
113 *Id.*
114 *Id.* at 41.
115 *Id.*
116 *Id.* at 42.
117 *Id.*
118 *Id.*

United States Congress.[119] Through its analysis, it was discovered that the United States Sentencing Commission had to define the term "images," as well as quantify video images in order to implement the United State Congress' directive.[120] The United States Sentencing Commission determined that because each video could contain multiple images, the video itself should be counted as more than one image.[121] With the assistance of the image table enacted by the United States Congress, the United States Sentencing Commission "adopted a definition of video that considered each video to contain [seventy-five] images, squarely in the middle of the [two] level increase range."[122] The United States Sentencing Commission also "authorized an upward departure if the video was substantially longer than five minutes."[123] Additionally, among other changes and amendments, the United States Sentencing Commission added a two level decrease for offenders whose offense was limited to receipt or solicitation of child pornography materials; the reduction was supported by finds that "in many instances, simple receipt of child pornography is very similar to simple possession of child pornography, despite the different statutory penalties that impose a five year mandatory minimum penalty to receipt offenses."[124] On November 1, 2004, the guideline changes made pursuant to the PROTECT Act became effective.[125]

In the fall of 2008, the United States Congress, through the PROTECT Our Children Act, created a new offense with a statutory maximum of fifteen years, which made it unlawful to "knowingly produce with intent to distribute, or to knowingly distribute, child pornography that

---

[119]    *Id*. at 43.
[120]    *Id*.
[121]    *Id*.
[122]    *Id*.
[123]    *Id*. at 43-44
[124]    *Id*. at 48.
[125]    *Id*.

is an adapted or modified depiction of an identifiable minor."[126] The United States Sentencing Commission selected a base offense level of eighteen for the offense, which was four levels lower than the base offense level for the other child pornography distribution offenses contained within §2G2.2.[127] The United States Sentencing Commission determined that the lower base offense level was appropriate because "the process of creating the image does not involve the sexual abuse of a child and [the United States] Congress provided a lower penalty structure for this offense compared to other child pornography distribution offenses."[128] The United States Sentencing Commission also noted that the "lower base offense level also accounts for the fact that the enhancements…[for use of a computer]…will likely apply in these cases."[129]

In 2012, the United States Sentencing Commission released a report to the United States Congress which examined cases of offenders sentenced under the United States sentencing guidelines for child pornography offenses.[130] The primary focus of the 2012 Report to Congress was §2G2.2, the sentencing guideline for child pornography offenses such as possession of child pornography, receipt of child pornography, and distribution of child pornography.[131] According to the United States Sentencing Commission, the purpose of the 2012 Report to Congress was to "contribute to the ongoing assessment by [the United States] Congress and the various stakeholders in the federal criminal justice system regarding how federal child pornography offenders are prosecuted, sentenced, incarcerated, and supervised following their reentry into the

---

[126] *Id*. at 50.
[127] *Id*.
[128] *Id*. at 51.
[129] *Id*.
[130] *See generally*, The United States Sentencing Commission, *2012 Report to Congress* (2012), http://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses (Last visited December 1, 2016).
[131] The United States Sentencing Commission, *2012 Report to Congress*, Executive Summary, i, (2012) http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Executive_Summary.pdf (Last visited December 1, 2016).

community."[132] Further, the United States Sentencing Commission has noted several factors contributing to the issuance of the 2012 Report to Congress, including: the steadily decreasing rate of sentences imposed within the applicable guidelines ranges in non-production cases; and the existing sentencing scheme in non-production cases not adequately distinguishing among offenders based on their degrees of culpability as a result of recent changes in the types of computer and internet technologies that offenders use.[133]

In preparation for the issuance of the 2012 Report to Congress, the United States Sentencing Commission "reviewed both relevant statutory and case law as well as social science and legal literature concerning child pornography offenses, offenders, and victims; engaged in extensive data analyses of several thousands of federal child pornography cases from fiscal year 1992 through the first quarter of fiscal year 2012; studied recidivism rates for child pornography offenders, including conducting a recidivism study of six-hundred and ten federal child pornography offenders sentenced under the non-production guidelines in fiscal years 1999 and 2000; and held a public hearing at which the Commission received testimony from experts in technology and the social sciences, treatment providers, law enforcement officials, legal practitioners, victims' advocates, and members of the judiciary."[134] As a result of their research, the United States Sentencing Commission discovered than an increasing number of courts and parties in non-production types of child pornography cases have "engaged in charging and sentencing practices that have had the effect of limiting the sentencing exposure for many child pornography offenders."[135] The United States Sentencing Commission opined that this limitation

---

[132]     *Id.*
[133]     *Id.* at ii.
[134]     *Id.* at iii.
[135]     *Id.* at xii.

on sentencing exposure for many non-production child pornography offenders is a result of the view that the sentencing scheme for non-production child pornography offenses is "outdated, fails to distinguish adequately among offenders based on their levels of culpability and dangerousness, and is overly severe in some cases."[136] Furthermore, the United States Sentencing Commission noted that growing sentencing disparities have resulted from the aforementioned practices.[137]

The United States Sentencing Commission's research portrayed that approximately eighty percent of "non-production child pornography offenders in the fiscal year 2010 had their sentencing exposure reduced by one or more of the four practices employed by the parties and/or the courts."[138] The four practices employed by the parties and/or the courts that the United States Sentencing Commission considered include: charging practices; government stipulations/plea agreements; government sponsored variances and departures; and non-government sponsored variances and departures.[139] The United States Sentencing Commission's research demonstrated that "the median sentence for defendants whose sentencing exposure was limited was less than one half of the median sentence for defendants whose sentencing exposure was not limited."[140] Additionally, the United States Sentencing Commissions discovered that certain mandatory minimum sentences also had a disparate effect on the length of criminal sentences imposed for non-production child pornography offenses.[141] As noted by the United States Sentencing Commission, "because a mandatory minimum penalty did not apply to many of the defendants

---

[136] *Id.*
[137] *Id.*
[138] *Id.*
[139] *Id.*
[140] The United States Sentencing Commission, *2012 Report to Congress*, Chapter Eight, 226, (2012), http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Chapter_08.pdf (Last visited December 1, 2016).
[141] *Id.*

24

whose sentencing exposure was limited, a significant percentage of such defendants received sentences of less than sixty months."[142] However, "relatively few defendants whose sentencing exposure was not limited received prison sentences below sixty months."[143]

The United States Sentencing Commission's research indicated that "the current sentencing scheme in §2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual dangerousness."[144] The United States Sentencing Commission determined that penalty ranges for certain child pornography offenses are too severe for some child pornography offenders and too lenient for other child pornography offenders.[145] The United States Sentencing Commission established three categories of child pornography offender behavior that should be considered as primary factors in imposing sentences in §2G2.2 cases, including: "the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the age of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technologies); the degree of an offender's involvement with other offenders — in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense."[146] As a result, the United States

---

[142]     *Id.*
[143]     *Id.*
[144]     The United States Sentencing Commission, *2012 Report to Congress*, Executive Summary, xviii, (2012) http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Executive_Summary.pdf (Last visited December 1, 2016).
[145]     *Id.*
[146]     *Id.*

Sentencing Commission concluded that the sentencing guidelines for offenses encompassed in §2G2.2 should "be revised to more fully account for these three factors and thereby provide for more proportionate punishments."[147]

<div align="center">

**UNITED STATES V. BOOKER: AN OVERVIEW**

</div>

In *United States v. Booker*, the Supreme Court of the United States held unconstitutional two provisions of the Sentencing Reform Act of 1984.[148] Specifically, the two provisions of the Sentencing Reform Act of 1984 that were found to be unconstitutional were the provisions that were directly attributed to the sentencing guidelines' mandatory nature and language.[149] As a result of the Supreme Court of the United States' modification, the United States sentencing guidelines ultimately became advisory in nature.[150] As a result of the Supreme Court of the United States' holding, trial courts were now required to only consider the sentencing ranges set forth in the United States sentencing guidelines.[151] Moreover, trial courts were now permitted to tailor the offender's criminal sentence in light of other statutory concerns.[152]

In *United States v. Booker*, the defendant was charged with and found guilty of possession with intent to distribute at least fifty grams of cocaine.[153] The statute that the defendant was found guilty under prescribed a minimum sentence of ten years in prison a maximum sentence of life.[154] Solely based upon the defendant's criminal history and the amount of cocaine base found by the jury, the United States sentencing guidelines required the court to

---

[147]     *Id.*
[148]     *See generally*, *United States v. Booker*, 543 U.S. 220 (2005).
[149]     *Id.*
[150]     *Id.*
[151]     *Id.*
[152]     *Id.*
[153]     *United States v. Booker*, 543 U.S. 220, 227 (2005).
[154]     *Id.*

select a base offense level that called for a sentencing range of no less than two hundred and ten months to no more than two hundred and sixty-two months in prison.[155] After holding a post-trial sentencing proceeding, the trial judge concluded by a preponderance of the evidence that the defendant had possessed an additional five hundred and sixty-six grams of cocaine.[156] In addition, at that proceeding, the trial judge concluded that the defendant was also guilty of obstructing justice.[157] The trial judge's new findings mandated that the defendant be sentenced in a sentencing range between three-hundred and sixty months and life imprisonment in prison.[158] Ultimately, the defendant received a thirty-year sentence.[159]

In *United States v. Booker*, as the Supreme Court of the United States opines, the defendant's case illustrates the mandatory nature of the sentencing guidelines.[160] The jury convicted the defendant of possessing at least fifty grams of cocaine based on evidence which demonstrated that he had approximately ninety-three grams of cocaine in his duffel bag.[161] As the Supreme Court of the United States notes, under the aforementioned facts alone, the sentencing guidelines specified a base offense level of thirty-two, which mandated a criminal sentencing ranging between two-hundred and ten months and two-hundred and sixty-two months.[162] Under the United States sentencing guidelines, had the trial judge not imposed a sentence range within the sentencing range for a base offense level of thirty-two, he would have been reversed.[163]

---

<div style="font-size:small">

155 *Id.*
156 *Id.*
157 *Id.*
158 *Id.*
159 *Id.*
160 *United States v. Booker*, 543 U.S. 220, 235 (2005).
161 *Id.*
162 *Id.*
163 *Id.*

</div>

According to Kathyrn A. Kimball, "the rate at which courts imposed non-government sponsored, below [United States sentencing guidelines] range sentences for [child pornography] offenses…increased after [*United States v.*] *Booker*.[164] As Kathryn A. Kimball's article entitled *Losing Our Soul: Judicial Discretion in Sentencing Child Pornography Offenders* notes, the percentage of downward departures for child pornography production offenses sharply rose from approximately two percent to approximately twelve percent after *United States v. Booker*.[165] Further, for child pornography distribution and trafficking offenses, the percentage of downward departures rose from approximately twelve percent to approximately nineteen percent following *United States v. Booker*.[166] The most dramatic percentage of downward departures that Kathryn A. Kimball highlights is the percentage of downward departures for possession of child pornography offenses which rose from approximately twelve percent to approximately twenty-six percent after the Supreme Court of the United States' decision in *United States v. Booker*.[167] As the aforementioned percentages demonstrate and as Kathryn A. Kimball states, "[c]learly [*United States v.*] *Booker* emboldened federal judges to grant downward departures more freely than under…the mandatory [federal sentencing guidelines'] system.[168]

Moreover, according to Holly H. Krohel, the federal sentencing guidelines "decreased disparity and increased transparency" in criminal sentencing.[169] In her article entitled *Dangerous*

---

[164]    Kathryn A. Kimball, *Losing Our Soul: Judicial Discretion in Sentencing Child Pornography Offenders*, Florida Law Review, Volume 63, 1525, http://www.floridalawreview.com/wp-content/uploads/2011/11/Kimball_BOOK.pdf  (Last visited December 1, 2016).
[165]    *Id.*
[166]    *Id.*
[167]    *Id.*
[168]    *Id.* at 1525-26.
[169]    Holly H. Krohel, *Dangerous Discretion: Protecting Children by Amending the Federal Child Pornography Statutes To Enforce Sentencing Enhancements and Prevent Noncustodial Sentences*, 48 San Diego L. Rev. 623, 655 (2011). https://advance.lexis.com/document/?pdmfid=1000516&crid=b99e81a3-fa24-418b-b570-2f05a30dac41&pddocfullpath=%2Fshared%2Fdocument%2Fanalytical-materials%2Furn%3AcontentItem%3A53GG-6870-00CW-F0M8-00000-00&pddocid=urn%3AcontentItem%3A53GG-6870-00CW-F0M8-00000-

*Discretion: Protecting Children by Amending the Federal Child Pornography Statutes to*

*Enforce Sentencing Enhancements and Prevent Noncustodial Sentences*, she states, "sentencing

disparities increased in the wake of [*United States v.*] *Booker* and its progeny, and the most

recent data from the [United States Sentencing] Commission shows that nearly half of the

defendants sentenced in the fiscal year 2009 received sentences outside [of] the [United States

sentencing guidelines] range.[170] Moreover, as noted by Holly H. Krohel, "the [United States

sentencing guidelines] became advisory in order to cure the Sixth Amendment violation that

occurred in some cases when the [United States sentencing guidelines] were mandatory."[171]

Further, "the remedial majority wanted to fix the Sixth Amendment problem while preserving

[the United States Congress'] goal of uniformity of sentencing, but the current state of affairs

indicates that the advisory system is not achieving that goal."[172] Holly H. Krohel notes that the

sentencing data illustrates that many defendants who are charged with the same offenses and

have the same criminal history are sentenced very differently; in fact, the sentencing disparities

are even greater when it comes to child pornography offenses.[173] According to Holly H. Krohel,

the United States sentencing guidelines were necessary because "in a system claiming equal

justice for all, disparity was an inexplicable yet constant source of embarrassment."[174] However,

as Holly H. Krohel ultimately states, many individuals in today's post *United States v. Booker*

society wonder whether the discretionary sentencing scheme is "unintentionally jeopardizing the

principle of equal justice under the law."[175]

---

00&pdcontentcomponentid=140726&pdteaserkey=sr0&ecomp=q85tk&earg=sr0&prid=35310abb-6639-4ce4-810c-490f53343f31 (Last visited December 1, 2016).

[170] *Id.*
[171] *Id.*
[172] *Id.*
[173] *Id.* at 656.
[174] *Id.*
[175] *Id.*

## JUDICIAL EXPLANATIONS FOR DOWNWARD
## DEPARTURES IN CHILD PORNOGRAPHY CASES

In *Rita v. United States*, the Supreme Court of the United States clarified that appellate judges could uphold sentences determined to be reasonable, regardless of whether the sentences fell either inside or outside the United States sentencing guidelines' recommended range.[176] Further, in *Gall v. United States*, the Supreme Court of the United States held that District Court judges must make individualized assessments based on the facts of the case presented, and need not automatically assume that the guideline range is reasonable.[177] According to Kimberly A. Kaiser and Cassia Spohn, following the Supreme Court of the United States' decision in *United States v. Booker*, "judges were allowed to depart from the sentencing guidelines based on individual case circumstances."[178] Additionally, in *Kimbrough v. United States*, the Supreme Court of the United States expanded their holding in *United States v. Booker*, holding that District Court judges "could use departures not only for individualized reasons specific to an offender or a case, but also based on the judge's categorical disagreement with a specific sentencing guideline policy."[179] Although the Supreme Court of the United States' opinion in *Kimbrough v. United States* only specifically addressed policy disagreements with the disparate sentences required for offenders convicted of crack and powder cocaine offenses, "several

---

[176]   *Rita v. United States*, 551 U.S. 338 (2007); Kimberly A. Kaiser and Cassia Spohn, *Fundamentally Flawed? Exploring the Use of Policy Disagreements in Judicial Downward Departure for Child Pornography Sentences*, 10. https://repository.asu.edu/attachments/144965/content/Author_final.pdf (Last visited December 1, 2016).

[177]   Gall v. United States, 552 U.S. 38 (2007); Kimberly A. Kaiser and Cassia Spohn, *Fundamentally Flawed? Exploring the Use of Policy Disagreements in Judicial Downward Departure for Child Pornography* Sentences, 10. https://repository.asu.edu/attachments/144965/content/Author_final.pdf (Last visited December 1, 2016).

[178]   Kimberly A. Kaiser and Cassia Spohn, *Fundamentally Flawed? Exploring the Use of Policy Disagreements in Judicial Downward Departure for Child Pornography Sentences*, 11. https://repository.asu.edu/attachments/144965/content/Author_final.pdf (Last visited December 1, 2016).

[179]   *Id*. at 11; *Kimbrough v. United States*, 552 U.S. 85 (2007).

appellate courts have applied this reasoning to child pornography offenses."[180] As a result, "the use of downward departures in [child pornography] cases has increased."[181]

As Kimberly A. Kaiser and Cassia Spohn note in their article and empirical study entitled *Fundamentally Flawed? Exploring the Use of Policy Disagreements in Judicial Downward Departure for Child Pornography Sentences*, as a result of the aforementioned court decisions, federal District Court judges have been given "more latitude to depart from the [United States] sentencing guidelines based on individualized assessments of offenders and their crimes."[182] Through their article and empirical study, Kimberly A. Kaiser and Cassia Spohn sought to "identify the reasons for judicial downward departure in these cases."[183] Through their research, the authors reviewed the reasons given by sentencing judges for the use of downward departures in child pornography cases in order to determine whether the use of departures in these types of cases represents a categorical "policy disagreement" with the United States sentencing guidelines for the vast group of child pornography offenses.[184] Initially, the authors noted that "one of the primary critiques of the current child pornography sentencing scheme is that it fails to distinguish between variations of severity, both within child pornography offenses as well as compared with other offenses."[185] As such, given the "lack of adaptability within the child pornography sentencing structure," the authors opined that it is possible that "judges will be more likely to use

---

[180]    *Id*. at 12; *Kimbrough v. United States*, 552 U.S. 85 (2007); *See generally*, The United States Sentencing Commission, *2012 Report to Congress* (2012), http://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses (Last visited December 1, 2016).

[181]    Kimberly A. Kaiser and Cassia Spohn, *Fundamentally Flawed? Exploring the Use of Policy Disagreements in Judicial Downward Departure for Child Pornography Sentences*, 11. https://repository.asu.edu/attachments/144965/content/Author_final.pdf (Last visited December 1, 2016); *Kimbrough v. United States*, 552 U.S. 85 (2007).

[182]    *Id*. at 11.
[183]    *Id*. at 4.
[184]    *Id*. at 15.
[185]    *Id*. at 13.

Case 1:18-cr-00094-WCG   Filed 10/22/18   Page 31 of 37   Document 23-1

downward departures to mitigate what they perceive as disproportionately severe sentences."[186] Further, the authors hypothesized that "judges could conclude that child pornography offenders do not pose a danger to the community to the extent that the [United States sentencing guidelines] sentence would warrant."[187]

When departing from the United States sentencing guidelines, federal sentencing judges are asked to provide reasons for giving a criminal sentence that deviates from the recommended United States sentencing guidelines sentence.[188] The authors' research indicated that the top three reasons given by federal sentencing judges for the use of downward departures in cases involving child pornography offenses were all grounds enumerated in 18 U.S.C. §3553, which articulates various factors to be considered during the imposition of a criminal sentence.[189] The top three reasons given by federal sentencing judges for the use of downward departures in cases involving child pornography offenses include the following: the nature and circumstances of offense and history and character of defendant; reflect seriousness of offense, promote respect for law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct.[190] Unfortunately, as the authors note, the non-descriptive nature of the aforementioned reasons "does not provide much insight into whether [federal sentencing] judges are using these to express categorical disagreement with the sentencing policy or whether these are individualized assessments or some combination of the two."[191]

The authors then sought to gain insight at the specific intentions of federal sentencing judges through the examination of reasons for downward departures that do not "neatly fit" into

---

[186]     *Id.*
[187]     *Id.*
[188]     *Id.* at 24.
[189]     *Id.* at 25.
[190]     *Id.*
[191]     *Id.*

a specific category.[192] As the authors note, within the large number of possible "reason codes" available within the federal data, "delving into those that do not fit into this coding structure could provide more insight."[193] According to the authors, "[t]hese textual explanations for guideline departures count as "other" within the coding system offer more meaning into the exact reasoning the judge provided."[194] To assess the frequency at which judicial reasons do not fit within the traditional departure reasons, the authors counted the number of textual reasons offered for each offense category and calculated the rate per one-thousand cases.[195] The authors' empirical research indicated that the rate at which judicial explanations fit within this "other" option for judicial downward departures is "higher for nonproduction child pornography than for any other offense type."[196] The authors note that this finding "suggests that [federal sentencing] judges might apply more nuanced explanations when using downward departures for child pornography offenses."[197]

Further, the authors' finding "is further confirmed by the substance of the text descriptions provided for the reasons given for below [United States sentencing guidelines] sentences for child pornography offenses."[198] For example, the authors' research indicated that federal sentencing judges provided some of the following explanations for granting downward departures in federal sentences for child pornography offenders: "§2G2.2 fundamentally flawed"; "[j]udge categorical disagreement with §2G2.2 enhancements including computer use and [prepubescent] child and no [number] of images"; "[u]sage of computer enhances penalty

---

192    *Id.*
193    *Id.*
194    *Id.*
195    *Id.* at 26.
196    *Id.*
197    *Id.*
198    *Id.*

33

court sees this as artificial"; and "[court] views actions of [the United States Congress] regarding these types of cases as unreasonable."[199] Ultimately, the authors concluded that by attempting to circumvent what they view as flawed and overly punitive federal sentencing policies in cases involving child pornography offenses, "judges might be using their discretion to craft sentences that are more appropriate."[200] As the authors correctly note, "[t]he reasons provided by [federal sentencing] judges for downward departures in child pornography cases lend credence to this argument,"[201] as "[m]any [federal sentencing] judges who departed from the presumptive sentence did so because of disagreement with the sentencing policies (and the resulting presumptive sentences) adopted for these types of cases."[202]

### JUDICIAL EXPLANATIONS FOR DOWNWARD DEPARTURES IN CHILD PORNOGRAPHY CASES EXHIBITED: UNITED STATES V. BAIRD AND UNITED STATES V. GROBER

As Kimberly A. Kaiser and Cassia Spohn's findings articulate, the top three reasons given by federal sentencing judges for the use of downward departures in cases involving child pornography offenses include the following: the nature and circumstances of offense and history and character of defendant; reflect seriousness of offense, promote respect for law, provide just punishment for the offense; and afford adequate deterrence to criminal conduct.[203] One case that supports this conclusion is *United States v. Baird*, where a defendant who pled guilty to possession of child pornography was given a twenty-four month sentence when the United States

---

[199]    *Id.*
[200]    *Id.* at 29.
[201]    *Id.*
[202]    *Id.*
[203]    *Id.* at 25.

sentencing guidelines recommended a sentence range of forty-six months to fifty-seven months based on the offender's base offense level and criminal history score.[204] In choosing to downwardly depart from the United States sentencing guidelines' recommended sentence, the court applied the factors outlined in 18 U.S.C. §3553 to the facts of the matter at hand.[205] In *United States v. Baird*, the court noted that while possession of child pornography is a serious offense, the seriousness of the offense as applied to the defendant in the current matter was "attenuated by the fact that the conduct occurred a number of years ago, and there is no evidence that the activity continued over any extended period of time."[206] In regards to the defendant's history and characteristics, the court noted that the defendant "has no criminal history points," "is intelligent and well educated," has "served his country in Afghanistan and Iraq, receiving several commendations," and has "complied with stringent conditions of pretrial release."[207] Moreover, the court noted and found it unlikely that the offender would "engage in this crime or any other criminal behavior in the future."[208] The court additionally noted that the offender has "already suffered serious consequences as a result of his actions."[209] Accordingly, the court found that a sentence of twenty-four months of incarceration "adequately addresses the sentencing objectives outlined in [18 U.S.C. §3553], and will impose a sentence sufficient, but not greater than necessary, to comply with sentencing purposes."[210]

In addition to the three traditional reasons given by federal sentencing judges for the use of downward departures in cases involving child pornography offenses, Kimberly A. Kaiser and

---

[204]   *United States v. Baird*, 2008 U.S. Dist. LEXIS 2338 (D. Neb. 2008).
[205]   *Id*. at 893-95.
[206]   *Id*. at 893.
[207]   *Id*. at 893-94.
[208]   *Id*. at 894.
[209]   *Id*.
[210]   *Id*. at 896.

35

Cassia Spohn also identify several nontraditional textual reasons that federal sentencing judges have given to justify downwardly departing from the sentence recommended by the United States sentencing guidelines.[211] As noted by Kimberly A. Kaiser and Cassia Spohn, these nontraditional textual reasons are a sentencing judge's method of illustrating and articulating various flaws to and disagreements with the current sentencing scheme for child pornography offenses in order to craft a more appropriate sentence.[212] One case that supports this finding is *United States v. Grober*, where a defendant who pled guilty to six child pornography counts was given a sixty month sentence when the United States sentencing guidelines recommended a sentence range of two-hundred and thirty-five months to two-hundred and ninety-three months based on the offender's base offense level and criminal history score because the court was "clearly troubled by the sentence of imprisonment that [the United States sentencing guidelines] range produced."[213] The court set forth an explanation that "adequately explained why it found §2G2.2 flawed and why it varied from the recommended sentencing range to the ultimate sentence it imposed."[214] Additionally, the court noted that "§2G2.2 leads to a sentence that is too severe in a downloading case."[215] Moreover, the court discussed several additional reasons why it believed §2G2.2 to be flawed, finding that "most of the enhancements are essentially inherent in the crime and, thus apply in nearly every case," and that the United States sentencing guidelines produced "an outrageously high sentence."[216] As such, the court held that the

---

[211]     Kimberly A. Kaiser and Cassia Spohn, *Fundamentally Flawed? Exploring the Use of Policy Disagreements in Judicial Downward Departure for Child Pornography Sentences*, 26. https://repository.asu.edu/attachments/144965/content/Author_final.pdf (Last visited December 1, 2016).
[212]     *Id*. at 29.
[213]     *United States v. Grober*, 624 F. 3d 592, 596 (3rd Cir. 2010).
[214]     *Id*. at 609.
[215]     *Id*. at 597.
[216]     *Id*. at 597-98.

sentencing range for §2G2.2 would not be applied, as it "produces an unreasonable sentencing range even before considering the sentencing factors in [18 U.S.C. §3553]."[217]

## CONCLUSION

In conclusion, a considerable amount of sentencing disparities and downward sentencing departures have occurred in many federal criminal cases, especially and most prevalently in cases involving federal child pornography offenses, as opposed to similarly situated offenses, like sexual abuse. As the aforementioned case, statutory, and historical progression demonstrates, nationally, the sentencing disparities and downward departures in federal child pornography cases, and in general, have only increased since the Supreme Court of the United States' holding in *United States v. Booker*, which essentially made the federal sentencing guidelines purely advisory. By making the federal sentencing guidelines purely advisory, the concept of judicial discretion has since regained its prominence and notoriety in federal criminal sentencing proceedings, using both traditional and nontraditional grounds and explanations to essentially sidestep the United States sentencing guidelines completely to craft sentences that any given federal sentencing judge deems more appropriate. While the concept of judicial discretion can be extremely useful, especially since the harshness of the federal sentences for child pornography offenders has been widely criticized, it has ultimately affected the equality and uniformity of criminal sentences nationally, as criminal sentences for the same offense can vary vastly within one courthouse or even one district, let alone separate parts of the country.

---

[217]    *Id*. at 598.

37